UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LISA K.,[1]

        Plaintiff,

    v.                                                    **23-CV-663-LJV**
                                                            **DECISION & ORDER**
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

On July 7, 2023, the plaintiff, Lisa K. ("Lisa"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On November 14, 2023, Lisa moved for judgment on the pleadings, Docket Item 6; on February 2, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on February 16, 2024, Lisa replied, Docket Item 13.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Lisa applied for Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court denies Lisa's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

## I.    **THE ALJ'S DECISION**

On August 15, 2022, the ALJ found that Lisa had not been under a disability since October 1, 2020, her alleged onset date.  *See* Docket Item 3 at 23-24.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a).  *See id.*

At step one, the ALJ found that Lisa had not engaged in substantial gainful activity since her alleged onset date.  *Id.* at 24.  At step two, the ALJ found that Lisa suffered from four severe, medically determinable impairments: systemic lupus erythematosus, fibromyalgia, rheumatoid arthritis, and inflammatory arthritis.  *Id.*

At step three, the ALJ found that Lisa's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 27.  More specifically, the ALJ found that Lisa's physical impairments did not meet or medically equal listing 14.09 (inflammatory arthritis).  *Id.*  In assessing Lisa's mental impairments, the ALJ found that Lisa was not impaired in (1) understanding, remembering, or applying information; (2) interacting with

others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself.  *Id.* at 26-27.

The ALJ then found that Lisa had the residual functional capacity ("RFC")[4] to "perform a full range of medium work as defined in 20 C[.]F[.]R[. §] 404.1567(c)."  *Id.* And at step four, the ALJ found that Lisa could perform her past relevant work as "vice president [of a] financial institution."  *Id.* at 31; *see Dictionary of Occupational Titles* 186.117-078, 1991 WL 671321 (Jan. 1, 2016).  As a result, the ALJ found that Lisa had not been under a disability since her alleged onset date of October 1, 2020.  *See* Docket Item 3 at 32.

## II.    ALLEGATIONS

Generously reading her motion, the Court finds that Lisa raises two arguments: that the ALJ failed to properly evaluate her subjective complaints and that the ALJ erred in evaluating the opinion of Russell Lee, M.D.  Docket item 6-1 at 6-10.  More specifically, Lisa says that the ALJ "failed to account for—or reasonably reject—[her] consistent reports of fatigue due to lupus," *id.* at 6, and that he failed to "clearly accept or reject" the limitations in Dr. Lee's opinion, *id.* at 9.  For the reasons that follow, this Court disagrees.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

III.    **ANALYSIS**

An ALJ must determine "the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [his or her] ability to work."  20 C.F.R. § 404.1529(a).  This is a two-step inquiry.  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010); *see* 20 C.F.R. § 404.1529(d).  First, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).  "Second, once an underlying physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*

An ALJ's evaluation of a claimant's subjective complaints is "entitled to great deference and therefore can be reversed only if [it is] patently unreasonable."  *Pietrunti v. Dir., Off. Of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (acknowledging that the "patently unreasonable" standard applies in the Social Security context); *David C. v. Comm'r of Soc. Sec.*, 659 F. Supp. 3d 354, 370 (W.D.N.Y. 2023) (same).  That is because the ALJ "has the opportunity to observe witnesses' demeanor, candor, fairness, intelligence[,] and manner of testifying" and therefore is in the best position to accurately assess a claimant's subjective complaints. *David C.*, 659 F. Supp. 3d at 370 (internal quotation marks and citation omitted).

The ALJ correctly applied the two-step inquiry here.  At step one, he found that Lisa's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms."  Docket Item 3 at 28.  At step two, however, he concluded that Lisa's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . .."  *Id.*  The ALJ then recognized that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work related activities."  *Id.*  And he did exactly that, looking to the record to decide whether Lisa was disabled.

Lisa argues that in doing so, the ALJ failed to account for her complaints of fatigue.  Docket Item 6-1 at 6.  But the ALJ's consideration of those complaints is evident throughout his decision.

For example, in reviewing the consultative examination of Dr. Lee, the ALJ noted that Lisa "reported increased fatigue," saying that "she could sit for 2 hours, stand for 15 to 20 minutes, walk about 2 miles, and climb a flight of stairs without any difficulty." Docket Item 3 at 29 (citing *id.* at 581-84).  The ALJ similarly noted the records of Kostas Botsaglou, M.D., which included Lisa's report that "her fatigue had improved and her joint pain and stiffness were less obvious."  *Id.*  Other records to which the ALJ referred noted similar complaints.  *See id.* at 30 ("[O]n November 17, 2021[,] . . . [Lisa] still reported achiness, fatigue, and joint pain, but continued to remain active and was able to walk her dogs."); *id.* ("[O]n May 26, 2022, . . . [Lisa] stated that she continued to have

6

pain and stiffness associated with fatigue.").  Because the ALJ weighed those reports and examinations in finding Lisa's RFC, *see id.* at 27-31, he did not err, *see Ana H. v. Comm'r of Soc. Sec.*, 2020 WL 6875252, at *10 (W.D.N.Y. Nov. 23, 2020) (finding that the ALJ acknowledged subjective complaints and "implicitly considered [their] limiting effects" by relying on medical opinions that considered such complaints).

The ALJ also considered Lisa's activities of daily living and found them to be inconsistent with her subjective complaints.  *Id.* at 31.  Specifically, the ALJ credited Lisa's statements that "she cooks 3 to 4 times a week, cleans once a week, does laundry 3 times a week, and shops," and that "[s]he also drives, walks her dogs, [and] goes to the gym 3 to 4 times a week . . .."  *Id.*  Based on those activities, the ALJ concluded that Lisa was capable of performing a full range of medium work*, id.,* and the RFC reflected that conclusion*, id.* at 27.  So, far from failing to account for Lisa's subjective complaints of fatigue, the ALJ considered those complaints and balanced them against the medical records throughout his decision.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) ("[R]emand is not required where the evidence of record permits [the Court] to glean the rationale of an ALJ's decision." (internal quotation marks and citation omitted)).

What is more, the opinion evidence supported the RFC as well.  For example, after examining Lisa on May 11, 2021, Dr. Lee opined, among other things, that Lisa had only "mild to moderate limitations to activity involving prolonged standing."  Docket Item 3 at 29 (citing *id.* at 584).  The ALJ found Dr. Lee's opinion "partially persuasive," discounting it to the extent that it did "not provide a function by function analysis."  *Id.* at 31.  But the ALJ explained that Dr. Lee's "findings, such as normal range of motion and

7

5/5 grip strength, do not support disabling physical issues." *Id.* And the ALJ fashioned an RFC consistent with those findings.

Even more on point, the ALJ noted the opinion of "[t]he Disability Determination Services medical consultant"—G. Ehlert, M.D., *id.* at 93—finding that Lisa "could perform the full range of medium work." *See id.* at 31 (citing *id.* at 89-93). Dr. Ehlert specifically opined that "[b]ased on the seven strength factors of the physical RFC (lifting/carrying, standing, walking, sitting, pushing, and pulling)," Lisa could perform medium work. *Id.* at 92. The ALJ found that opinion to be "persuasive" because it was "consistent with the claimant examination findings and activities of daily living," *id.* at 31 (noting that Lisa "walks her dogs[ and] goes to the gym 3 to 4 times a week"), and he fashioned an RFC incorporating that precise limitation. *Id.* at 27, 31.

Thus, the ALJ considered Lisa's subjective complaints, weighed them against the medical records, and fashioned an RFC consistent with the opinion evidence. Lisa's first argument therefore lacks merit.

Lisa also argues that the ALJ failed to "clearly accept or reject [Dr. Lee's] limitation," and that "this opinion needed to be reconciled before finding [Lisa] capable of medium work." Docket Item 6-1 at 9. But an ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983), and an RFC need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). So long as an ALJ's analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," remand is

not required.  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  And the ALJ's decision did so here.

The ALJ appropriately reviewed Dr. Lee's opinion in light of all the other evidence in the record.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n [ALJ] is free to . . . choose between properly submitted medical opinions").  And he crafted an RFC that was largely consistent with that opinion.  *See* Docket Item 3 at 27-31.  But even if he had not, the RFC finds more than enough support in Dr. Ehlert's opinion and in Lisa's reported activities of daily living.  *See Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record.").  Lisa's second argument therefore lacks merit as well.

## **CONCLUSION**

Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second guess it. The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Lisa's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 12, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:      October 27, 2025
            Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE